UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11115-RWZ

DERRICK PETERSON
and ESMERALDA A. PETERSON

v.

GMAC MORTGAGE, LLC,
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

ORDER

October 25, 2011

ZOBEL, D.J.

Plaintiffs own a property in Holliston, Massachusetts ("the Property"). In July 2007 they obtained a loan from Prime Mortgage Financial that was secured by a mortgage ("the Mortgage") on the property to Mortgage Electronic Registration Systems, Inc. ("MERS"). On February 1, 2011, an assignment of the mortgage from MERS to GMAC was registered on plaintiff's certificate of title. GMAC commenced foreclosure proceedings and scheduled a sale on June 9, 2011. Plaintiffs responded with a three-count complaint in the Framingham District Court challenging the assignment of the mortgage (Count I), and alleging fraud (Count II), as well as violations of Mass. Gen. Laws ch. 93A by both assignor and assignee (Count III). Their ex parte motion to enjoin the sale was allowed by that court and defendants removed the case on diversity grounds. The matter is before me now on defendants' motion to dismiss all counts.

In their complaint plaintiffs allege that John Kerr, a Vice President of MERS, who purportedly authorized the assignment of the Mortgage to GMAC Mortgage, LLC ("GMAC"), is regarded as a "well known robo signer" by "many consumer advocates," and therefore there is reason to believe that the signature on the assignment of the Mortgage is not genuine, and thus without a genuine signature the assignment is not valid.[1]

Next, plaintiffs allege that the assignment is invalid because MERS was never actually the mortgagee. Although, the Mortgage does state MERS is the mortgagee it also states that "MERS is a separate corporation acting solely as a nominee for lender and lender's successors and assigns," and it cannot be both the agent as the nominee and the principal as the mortgagee to the same property right. Plaintiffs conclude that because of the economic realities of the transaction (i.e. MERS did not fund any loans and no promise was ever made by the plaintiffs to pay MERS), MERS is a nominee and not the mortgagee and therefore was not able to assign the mortgage to GMAC in the first instance.

Plaintiffs further claim that GMAC cannot demonstrate valid assignment of the promissory note and that because it cannot establish valid assignment of both the mortgage and the promissory note, it has no right to foreclosure on the property.

---

[1] Plaintiffs attach four additional assignments of other properties (not owned by plaintiffs or at issue in this case) that are signed on MERS' behalf by Andrew S. Harmon, also purportedly a vice president, who, according to plaintiffs, is another "well known robo signer." Plaintiffs assert that the signatures by Mr. Harmon on the four assignments are not consistent and therefore because at least some of Mr. Harmon's assignments may have been forged, one reasonably could believe that the assignment of the mortgage on plaintiffs' property authorized by John Kerr is not valid either.

Lastly, plaintiffs allege that three days before the scheduled foreclosure they sent a short sale package to GMAC. GMAC did not review the package and stated they would have needed ten days to review the documents. One day before the foreclosure, the Attorney General's Office ("AGO") of Massachusetts requested a postponement of the foreclosure. GMAC refused, in part, on the grounds that it "already had one short sale on this property, in November 2010." According to plaintiffs, no short sale package had been previously submitted and GMAC ignoring the short sale package and the AGO's request, as well as making misrepresentations about a prior short sale of the Property constitutes bad faith and violates both common law fraud and Massachusetts' consumer law.

## I. STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Facial plausibility is shown "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Under this standard, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id.

## II. ANALYSIS

### A. Invalid Assignment

#### 1. Plaintiffs Lacks Standing to Challenge Mortgage Assignment

Plaintiffs do not challenge the merits of the foreclosure itself; instead plaintiffs argue that the assignment of the Mortgage from MERS to GMAC was invalid, and that GMAC therefore has no basis to foreclose as it is not the Mortgagee of record. Defendants argue that plaintiffs, as mortgagors, have no standing to challenge the validity of a mortgage assignment between the mortgagee and a third party.

Applying general principals of standing, defendants are correct. "In order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact ( i.e., a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (i.e., a " 'fairly ... trace[able]' " connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability." A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 498-99 (1975).

Here, plaintiffs do not establish that they have a legally protected interest, as mortgagor, in the assignment of their Mortgage from the original mortgagee to a third party, as they are not a party to the assignment nor are they granted any rights under it. In short, they are unrelated third parties with no interest in the assignment. Cf. Werner v. Stonebridge Life Ins. Co., 2007 WL 2412255, at *4 (D.R.I. June 19, 2007) ("Plaintiff has no legally-protected interest ... [p]laintiff is not a party to the contract, nor is he an intended third party beneficiary, therefore he lacks standing to bring the present claims").

Recently, United States District Court in Rhode Island considered whether plaintiffs, mortgagors, had standing to dispute MERS' power to foreclose under the terms of a servicing agreement and mortgage assignments to which they were not party. Fryzel v. Mortgage Electronic Registration Systems. Inc., No. CA 10-352 M (D.R.I. June 10, 2011). The court ruled that since the plaintiffs were not party to the mortgage assignments at issue, they lacked standing to raise any legal challenge to the validity of those assignments. Id. at 29. The court, collecting case law across several federal circuits, stated: "for over a century, state and federal courts around the country [have held] that a litigant who is not a party to an assignment lacks standing to challenge that assignment... [this] principle ... is well established ..." Id. at 30.

Likewise, the court in Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C, on similar facts, held that a borrower, as a non-party to the assignment documents it was challenging, lacked standing under Michigan law to attack them. 717 F. Supp. 2d 727, 735 (E.D. Mich. 2010), aff'd,, 399 Fed.Appx. 97, 102 (6th Cir. 2010), cert. denied, 131 S.Ct. 1696 (2011). The court noted:

> The underlying contract is between Obligor and Assignor. Assignor's assignment contract is between Assignor and Assignee. The two contracts are completely separate from one another. As a result of the assignment contract, Obligor's rights and duties under the underlying contract remain the same: The only change is to whom those duties are owed.... Obligor was not a party to [the assignment], nor has an cognizable interest in it. Therefore, Obligor has no right to step into Assignor's shoes to raise its contract rights against Assignee. Obligor has no more right than a complete stranger to raise Assignor's rights under the assignment contract.

Id. at 737 (emphasis added)(internal brackets omitted).

However, in Massachusetts, the Supreme Judicial Court in <u>U.S. Bank Nat. Ass'n v. Ibanez</u>, 458 Mass. 637, 647 (2011), stated "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under [Massachusetts law] is void..." and adopted case law stating that attempts to foreclose on a mortgage by a party that "had not yet been assigned [the] mortgage results in [a] structural defect [that] goes to the very heart of defendant's ability to foreclose [] and renders foreclosure sale void." <u>Id.</u> at 648.

Whether <u>Ibanez</u> gives Massachusetts mortgagors a legally protected interest in assignments to which they are not party, is apparently an open question in the First Circuit. At least one district court case has suggested that <u>Ibanez</u> seems to provide such standing. <u>Rosa v. Mortgage Electronic Systems, Inc.</u>, 2011 WL 4381191, at *3 n. 5 (D. Mass. Sept. 9, 2011) (finding "Plaintiffs appear to have standing under [<u>Ibanez</u>], because the allegations [regarding assignment validity], if proven, would render the foreclosure sale void, under Massachusetts law."). However, other cases either declined to take this approach, <u>In re Correia</u>, 452 BR 319, 324 (1st Cir. BAP June 30, 2011) (upholding lower court ruling finding non-party to mortgage assignment and agreement authorizing assignment lacked standing to challenge the validity of assignment), or have cast skepticism on the existence of such standing, <u>Kiah v. Aurora Loan Services, LLC</u>, 2011 WL 841282, at *6 (D .Mass. March 04, 2011) (stating "difficult to see why plaintiff has standing to assert [challenge to mortgage

assignment]").[2]

Ibanez began as an action in Massachusetts land court where two banks (acting as trustees) sought a declaratory judgment acknowledging that they held clear title to two properties on which they had foreclosed. Id. at 638. The banks were not the original mortgagees but claimed to be the ultimate assignees of the mortgage. Id. at 640 - 641, 644 - 645. Based on various deficiencies with the proof offered by plaintiffs to establish the complete chain of assignments, the land court determined that plaintiffs did not sufficiently establish that they were the holders of the respective mortgages at the time of the foreclosures and therefore failed to convey valid title. Id. at 638-640. Importantly, in Ibanez, the land court was specifically tasked with evaluating the sufficiency of the assignment process – the banks, as foreclosing parties and actual parties to the mortgage assignments had standing to seek court review of the validity of the assignment process.

I do not read Ibanez to provide an independent basis for mortgagors to collaterally contest previously executed mortgage assignments to which they are not a party and that do not grant them any interests or rights. Accordingly, plaintiffs have no legally protected interest in the Mortgage assignment from MERS to GMAC and therefore lack standing to challenge it.[3] [4]

---

[2] Also, while Fryze explicitly noted it was applying Rhode Island law, id. at 32, it noted that had Massachusetts law applied, in its view, the lower court's ruling in Ibanez did not provide support for plaintiff's standing to challenge the mortgage assignment. Fryze, No. CA 10-352 M, at 32 n. 27.

[3] Accordingly, plaintiffs' challenge to MERS' assignment of the promissory note is without standing and it is also moot. To foreclose in Massachusetts, GMAC need only hold the mortgage, not both the mortgage and the promissory note. "The Massachusetts statute governing foreclosures makes no mention of note holders." McKenna v. Wells Fargo Bank, N.A., 2011 WL 1100160, at *2 (footnotes

## 2.     The Assignment is Presumptively Valid and Plaintiffs Fail to Plead Facts Sufficient to Challenge Its Validity

Alternatively, the assignment is presumptively valid and plaintiffs fail to plead facts sufficient to challenge its validity.

Mass. Gen. Laws ch. 183 § 54B provides:

> Notwithstanding any law to the contrary, a[n] ... assignment of mortgage ... if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of ... vice president, ... secretary, ... or other similar office, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity ... shall be binding upon such entity ....

The heart of the ch. 183 § 54B inquiry, therefore, is whether (1) a person purporting to be an authorized signatory of the mortgage holder, (2) executed the assignment before a notary public or other authorized officer. <u>Aliberti v. GMAC Mortgage, LLC</u>, 779 F. Supp. 2d 242, 249 (D. Mass April 28, 2011) ("an assignment executed before a notary public by a person purporting to hold the position of vice president of the entity holding such mortgage shall be binding upon such entity"). Whether such individual has <u>actual authority</u> is not a concern addressed by the

---

omitted). <u>Valerio v. U.S. Bank, N.A.</u>, 716 F.Supp.2d 124, 128 (D. Mass. 2010) ("The Massachusetts statute governing foreclosure sales is addressed to mortgagees, not note holders."); <u>Kelly v. Deutsche Bank National Trust Company</u>, 2011 WL 2262915, *3 (D. Mass. 2011).

[4] Plaintiffs' challenge to the assignment on the grounds that MERS' status in the Mortgage is listed contradictorily as both a nominee and mortgagee is also without standing. Further, this challenge is without merit. <u>Cooper v. Bank of New York Mellon</u>, 2011 WL 3705058, at *13 (D. Haw. 2011) (holding assignment valid despite MERS being listed as nominee and mortgagee in mortgage instrument). The original mortgage clearly states "MERS is the mortgagee under this Security Instrument," and is therefore entitled to all the rights as mortgagee. Plaintiffs here do not contest this language, nor do they contest the mortgagee's authority to assign under the Mortgage terms.

statute. <u>Kiah v. Aurora Loan Services, LLC</u>, 2011 WL 841282, at *7 (D. Mass March 4, 2011)(holding even if mortgage assignment signatory lacked authority to assign mortgage, assignment would not be invalidated under Massachusetts law as long as ch. 183 § 54B requirements are satisfied). The assignor is not required to prove or validate the authority of the underlining signatories. <u>In re Marron</u>, 455 B.R.1, at *8 (Bankr. D. Mass. 2011) ("Because the assignments of both the mortgage and confirmatory mortgage on the debtors' property were executed [in accordance with ch. 183 § 54B] ... these assignments are binding and neither HSBC nor MERS must prove the authority of the signatories."). If the requirements of Mass. Gen. Laws ch. 183 § 54B are met, the court may properly find the entire assignment valid. <u>Carlson v. Wells Fargo Bank,</u> 2011 WL 3420436, at *6 (Bankr. D. Mass. 2011) (finding MERS validly assigned mortgage where authority and notary provisions of ch. 183 § 54B were satisfied).

  Here, a signature reading "John Kerr" that purports to be that of a vice president of MERS is clearly on the assignment document and it is notarized by Cindy A. Stewart of Montgomery County, Pennsylvania, which indicates that John Kerr personally appeared before her. Therefore, the assignment meets the requirements of ch. 183 § 54B and is facially valid.

  Plaintiffs' complaint fails to plead facts sufficient to challenge the validity of the mortgage assignment under Mass. Gen. Laws ch. 183 § 54B. Essentially in terms of ch. 183 § 54B, plaintiffs argue that there was no actual "person purporting to be ... an authorized signatory"– i.e. that Mr. Kerr's signature was a forgery.  The complaint's

basis for this assertion is that: (1) John Kerr is a well known robo signer; (2) all 50 state attorneys general are investigating the use of robo singers; (3) the TV show "60 Minutes" ran an exposé on mortgage assignments that were all signed as the same person (even though different people were physically signing them) and were notarized and recorded; and (4) the signatures on other unrelated assignments signed by a different vice president of MERS, Andrew S. Harmon, appear to vary across assignments which "leads one to believe" that John Kerr's signature is not valid either.

The bare speculative and conclusory assertion that John Kerr is a known robo signer is not entitled to any weight by the court. Further, as plaintiffs state, robo signers are "people who did not even review the documents before signing and recording" them -- therefore, even if accepted as true, these allegations do not indicate that John Kerr's signature was a forgery, only that he may not have reviewed the assignment carefully before signing it. The "60 Minutes" exposé and alleged variations of Mr. Harmon's signature are not facts related specifically to John Kerr, the only MERS vice president relevant here, and therefore these facts do not tend to establish that John Kerr's signature is not genuine.[5]  For these reasons, the complaint does not plead facts sufficient to challenge the validity of the mortgage assignment. A claim is subject to dismissal if it fails to state facts sufficient to establish entitlement "to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 555, 570 (2007).

---

[5] Further, MERS' assignments authorized specifically by Mr. Harmon have previously been held to be valid by this court. Rosa v. Mortgage Electronic Systems, Inc., 2011 WL 4381191, at *2 (D. Mass. 2011)("The assignment was executed by Andrew Harmon, purporting to be Assistant Secretary and Vice President of MERS, the entity that held title to the Mortgage, before a notary public.... Because the assignment complied with the requirements of the Massachusetts statute regarding mortgage assignments, it is valid").

For all the reasons stated in Sections 1 and 2 above, defendants' motion to dismiss is allowed as to Count I.

### B. Common Law Fraud

Common law fraud in Massachusetts requires: (1) a knowingly false statement; (2) intent to deceive; (3) materiality; (4) reliance; and (5) injury as a result of the reliance. Gerber v. Bowditch, 2006 WL 1284232, at *6 n. 9 (D. Mass. 2006). Here, plaintiffs allege that GMAC's failure to negotiate a short sale and misrepresentation to the AGO's office regarding a previous short sale constitutes common law fraud. Assuming, what plaintiffs imply, that GMAC's statement to the AGO constitutes the basis for their common law fraud claim, they fail to allege intent to deceive, materiality, reliance, or that any of their injuries are a direct result of the alleged misrepresentation.

The motion to dismiss is allowed as to Count II.

### C. Mass. Gen. Laws ch. 93A § 9

Chapter 93A requires plaintiffs to serve a written demand letter on prospective defendants at least thirty days prior to filing an action. Mass. Gen. Laws ch. 93A § 9(3), McDermott v. Mortgage Elec. Registration Systems, Inc., 2010 WL 3895460, at *8 (D. Mass September 30, 2010). The purpose of the demand letter "are twofold (1) to encourage negotiation and settlement .. and (2) to operate as a control on the amount of damages." Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 288 (1985)(internal citations and quotations omitted). The letter is "not merely a procedural nicety, but, rather, a 'prerequisite to the suit.'" Rodi v. S. New Eng. Sch. of Law, F. 3d 5, 20 (1st

Cir. 2004). It is undisputed that plaintiffs did not serve such a letter. Therefore, plaintiffs' claim fails procedurally.

This claim also fails substantively. Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults. See Carney v. Shawmut Bank, N.A., 2008 WL 4266248, at *3 (Mass. App. Ct. 2008) (per curiam) ("[mortgage holder is] under no obligation to [negotiate], and was equally free to exercise the rights which it had acquired under the loan agreements."). While it may be true that if a mortgage holder voluntarily engages in negotiation then it must do so in good faith, see Latham v. Homecomings Fin. LLC, 2009 WL 6297593, at *5 (Mass. Super. Ct. 2009) (once the mortgagor enters into negotiations or even forecloses lawfully, he cannot do so in bad faith), defendants did not negotiate in bad faith, because they declined to negotiate at all. Plaintiffs do not allege that defendants previously agreed to review the short sale documents or to postpone the foreclosure.

The motion to dismiss is allowed as to Count III.

### III.  CONCLUSION

Defendants' motion to dismiss (Docket # 2) is ALLOWED as to all counts.

   October 25, 2011                                   /s/Rya W. Zobel
           DATE                                            RYA W. ZOBEL
                                                        UNITED STATES DISTRICT JUDGE